IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

JOHN WATKINS,

    Plaintiff,

LIBERTY MUTUAL INSURANCE
COMPANY,

    Intervenor Plaintiff,

v.

VESTIL MANUFACTURING
CORP.,

    Defendant.

CIVIL ACTION
FILE NO. 2:07-CV-0152-RWS

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE PORTIONS OF THE TESTIMONY OF NATHAN T. DORRIS, Ph.D

## I. INTRODUCTION

Plaintiff seeks to exclude portions of the testimony of Dr. Nathan T. Dorris, a witness retained by the Defendant to provide expert opinion on warnings and human factors issues.  Dr. Dorris should be allowed to testify about matters within the scope of his expertise.  However, his Rule 26 Report and in his deposition testimony indicate that he is also likely to attempt to give opinions that are well beyond the limits of his expertise, are well beyond the facts of this case, and do not meet the requirements of Fed. R. Evid. Rules 702 and 703.

In particular, the Court should prohibit Dr. Dorris from opining about excessive warnings, that the load on the cart was obviously dangerous, that Plaintiff's employer has any responsibility for Plaintiff's injuries, that Plaintiff was not properly trained, and that there are no hidden dangers in using the Defendant's cart.  These opinions are either outside his expertise, not relevant to the facts of this case, or unsupported by the facts of this case.

Dr. Dorris lists six opinions in his Rule 26 Report and offered several subsets of these in his deposition.   The opinions that should be excluded pursuant to Fed. R. Evid. 702 are:

1.      **"The Effect of Over-warning Product Users"** (Body of Rule 26 Report p. 3. Here, Dr. Dorris opines that there is a general over use of warnings and that, apparently, the Defendant should be excused from its failures to provide any warning at all because the world already has too many warnings. As will be shown below, there is no scientific basis for this opinion; and, as there were no warnings at all, adding a necessary one would not have been warning overload on this product.

2.      **"Not Defective for Lack of Warnings or Instructions"** (Rule 26 Report p. 4; Opinion No. 1.  Here, Dr. Dorris opines that no warning was necessary because this was a low probability event and warnings are not necessary for low probability events.  As will be shown below, this opinion,

which necessarily relies on the event not being a "high probability" event should be excluded because Dr. Dorris is unable to define the probability of the event – a key element of his opinion that no warning is necessary.

       3.     **"Unstable Loads are an Obvious Hazard"** (Rule 26 Report p. 5; Opinion No. 3.   Here Dr. Dorris opines that it was open and obvious to the Plaintiff that a load near the edge of the cart would fall off the cart.  As will be shown below, this opinion does not fit this case because the load did not fall off the cart.  Instead, the cart tipped over in a manner Dr. Dorris agrees was not foreseeable or expected by the Plaintiff. Furthermore, to the extent this merely identifies negligent conduct by the Plaintiff, it is irrelevant because negligence is not a defense to Plaintiff's strict liability claims.

       4.     **"Employer's Responsibility for Worksite Safety"** (Rule 26 Report p. 6- Opinions Nos. 4 & the portion of Number 6 relating to Resilux's failure to train as a contributing cause of the event, and the deposition testimony in which Dr. Dorris opines that Plaintiff did not comply with Resilux' procedures.  Here, Dr. Dorris opines that the event occurred because Plaintiff was not properly trained by his employer, or did not follow the training he was provided.  As will be shown below, this opinion is beyond Dr. Dorris' expertise and does not fit the facts of this case.  Additionally, as Defendant did not properly assert this defense during the discovery period, it is not an issue in this

case and any testimony concerning Plaintiff's training is irrelevant.   (See Plaintiff's Motion in Limine to Exclude Employer Liability, (Doc. #156).

5. **"Disagreement with Dr. Colton relating to 'hidden danger' associated with the rotation of rear wheels."**   (Rule 26 Report p. 6; Opinion No. 5.  Here, Dr. Dorris opines that there is no hidden danger.  As will be shown below, this opinion is beyond Dr. Dorris' expertise and is actually inconsistent with his opinions as articulated in his deposition testimony.  Because the opinion is inconsistent with his testimony it is per se unreliable.

6. **Reasonableness of Defendant's Warning Efforts** (Opinion in Dr. Dorris' Deposition).  Dr. Dorris should be prohibited from opining as to the reasonableness of Defendant's efforts to determine what warnings and instructions were necessary to make the product safe.  As will be shown below, Dr. Dorris has no knowledge of the Defendant's efforts to determine what, if any, warnings were necessary.  Furthermore, to the extent this merely relates to negligent conduct by the Defendant it is irrelevant because negligence is not an element of Plaintiff's strict liability claims.

7. **How the Incident Occurred that Differs from That offered By Drs. Brani and Colton** - (Opinion in Dr. Dorris' Deposition).  Dr. Dorris should be prohibited from offering his own opinion as to how the event occurred.  As will be shown below, at the time he rendered his opinions, Dr.

Dorris' only knowledge of how the cart tipped over was provided by Drs. Brani and Colton.

Cross-examination of Dr. Dorris revealed that despite the fact that he articulates these opinions in his Rule 26 Report, or offered them in his deposition testimony, he does not actually hold the opinions, he has no basis for the opinions because he lacks the personal professional qualifications, there is no scientific basis for the opinions, or the opinions do not fit the facts of this case. Accordingly, these specific portions of his opinions should be excluded.

## II.    ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's motion to exclude Dr. Dorris' testimony should be granted.  Dr. Dorris is not qualified to provide some of the opinions he has proffered; and as to others, his opinions do not fit this case and are irrelevant.

### A.    The *Daubert* Analysis

The Supreme Court's landmark case of *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence.   This Court has described it this way:

> [A]ccording to Rule 702, expert testimony is only admissible if it satisfies three broad requirements: (1) the witness offering the testimony must have knowledge, skill, experience, training, or education that qualifies the witness as an expert; (2) the witness's opinions must be reliable;

> and (3) the witness's opinions must assist the trier of fact. In addition, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir.1999).

*Cobb v. Dawson*, No. 5:06-cv-066 HL, 2007 WL 4373255, at *1 (M.D.Ga. December 12, 2007).  As to the opinions at issue, Dr. Dorris' testimony fails one, two or all three of these requirements.

### B.    The Specified Opinions To Be Excluded

### 1.    Dr. Dorris Must be Prohibited from Testifying about "The Effect of Over-warning Product Users."

Dr. Dorris' opinion that there are simply too many warnings in the world should be excluded because (a), there is no scientific basis for a blanket opinion that a proliferation of warnings in general is a valid reason not to provide a specific warning on the particular product in this case; and (b), there was no warning whatsoever on the subject product and therefore the opinion that too many warnings dilutes the effectiveness of warnings does not fit the facts of this case.

There is no scientific support for the proposition that a proliferation of warnings generally excuses the failure to provide a necessary warning on a particular product.  In <u>Handbook of Warnings</u>, in a chapter titled Attention

Switch and Maintenance, Wogalter and Vigilant write that there is no support for the proposition that over-warnings (as opposed to over-loading – in which a single product has too many warnings) generally cause people to be less likely to pay attention to any warnings. (Michael S. Wogalter, Editor, <u>Handbook of Warnings</u>, Chapter 18, p. 258 (2006))  This is a publication that Dr. Dorris cites on pages 5 and 10 of his Rule 26 Report.  Dr. Dorris claims that he has support for the contrary position, but it unable to identify such in his deposition and does not in his Rule 26 Report.   Furthermore, even if there is support for this proposition, there is no scientifically supportable evidence that this Defendant should not have warned about the dangers related to its product because of this general abundance of warnings.   Dr. Dorris does not even believe this testimony as he admits that warnings are necessary.  (Dorris Dep., p. 154, 171, 195)

Even if there was some scientific support for Dr. Dorris' opinion, Georgia law requires that manufacturers provide warnings where necessary. *See Bishop v. Farhat*, 227 Ga. app. 201, 206, 489 S.E.2d 323 (1997) (product seller is required to warn if it "has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge of the danger" created by its product); *Chrysler Corp. v. Batten*, 264 Ga. 723, 724, 450 S.E.2d 208 (1994) ("[T]he manufacturer of a product which, to its actual or constructive knowledge, involves danger to users, has a duty to give warning of such danger.")  Allowing

Dr. Dorris to testify that despite the law warnings are not necessary would be no different than allowing an expert to testify that drivers should not obey speed limits because they don't make highways safer.   Accordingly, this testimony is not only bad science, it does not fit and should not be admitted. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3ʳᵈ Cir. 2000) ("[T]he expert's testimony must 'fit,' in that it must assist the trier of fact. Admissibility thus depends in part upon 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'")

Dr. Dorris admits that there is no over-warning issue on the subject product.   Thus, allowing him to testify about the effect of too many warnings in general will be admitting evidence that does not fit this case. (Depo, p. 106) All expert testimony must fit the case to be admissible.  *Id*.

2. **Dr. Dorris Must be Prohibited from Testifying the Cart is "Not Defective for Lack of Warnings or Instructions".**

Dr. Dorris opines that a warning is necessary if there is a reasonably anticipated misuse of the product.  (Dep., p. 195/12).  Dr. Dorris also opines that warnings are appropriate for certain hazards.  (E.g., p.171; 154).  He believes that warnings have a value because the information can be used by the receiver to improve his or her performance and avoid injury.  P. 192.  However, Dr. Dorris is

of the belief that no warning is necessary in this case because the event at issue is not a high probability event.

Thus, the methodology Dr. Dorris uses requires an analysis of the risk to determine if it is of a sufficiently high probability to require a warning.  Indeed, in his Rule 26 Report he writes, at page 4: "Warnings should be reserved for high probability events."   If Dr. Dorris is being candid and truthful with the Court that it is his opinion that a warning is only necessary for "high probability events," it is obvious that for him to follow his own scientific method he must necessarily determine the probability of the event in question; and he must have a definition that considers what number of incidents occurring during the use of the product are sufficient to make the event one with a high probability.   In summary, Dr. Dorris' professed methodology expressed formulaically is this:

Risk + Probability = Need to Warn.

The information on the left hand side of the equation must exist for Dr. Dorris to be able to determine whether there is a need to warn or not.  If he does not have the information to determine either Risk or Probability he cannot, under his described methodology, render an opinion about whether a warning is necessary or not.  Dr. Dorris cannot provide that essential element in his formula.  First, the risk he describes is not the risk that led to the Plaintiff's injuries.  Second, he totally refuses to define what constitutes sufficient probability.

### a.      Dr. Dorris Does Not Understand the Risk at Issue

Dr. Dorris does not understand the risk that led to the Plaintiff's injuries and thus does not have the necessary information for the first element of his formula. Dr. Dorris is of the belief that the risk to the Plaintiff in using the cart was the risk associated with placing the 2,700-pound mold in a vertical orientation (p. 127/12) near the edge of the cart. (p.166/3). This is because the risk he perceived to be associated with this vertical placement near the edge was that the mold would tip off the cart, and fall onto the Plaintiff, because the mold was less balanced in that orientation. (Dep., pp.155-156)   The danger he considered  was that the product loaded onto the cart might tip over.  (Dep., pp. 207-08) But, the event that actually occurred was that the cart and mold together tipped over.  When asked specifically if he had an opinion about whether there was a hazard associated with movement of the axles on the steerable wheels that led to this combined tip-over he said quite clearly "I don't have an opinion about that…."  (Dep., p. 206/21-25)

Dr. Dorris has no opinion about whether the event that actually occurred – the change in orientation of the axles on the wheels that led the cart to go from stable to unstable -- should have been perceived.  Therefore, he is opining about the need to warn about a risk that did not happen (the mold tipping off the edge of the cart) and has no opinion about the event that did happen (the cart tipping

because of a change in its center of gravity.)  This means that the methodology he followed and the opinions he holds in this case do not fit the facts of this case.

**b.    Dr. Dorris Does Not Know the Probability of the Risk**

Dr. Dorris also fails to consider the likelihood of the event occurring.  As a result, under the methodology he chooses to follow, his opinion is little more than an unscientific guess.  His testimony bears this out.  Again, for Dr. Dorris' methodology to provide him with a basis for an opinion, he has to consider the probability of the occurrence.  Knowing this, he was carefully interrogated as to the probability of the event that caused the Plaintiff to be injured.  His answers demonstrate that he has no idea at all of the probability; rather, his opinion in this case is driven by a desire for a certain result, not adherence to good scientific methodology.  In particular, Dr. Dorris was asked to define the term "high probability," as his Rule 26 Report uses that phrase, since it his litmus test for determining when warnings are necessary.   His answers included "I can't give you a specific number.  There is no quantifiable number;" and "I cannot possibly give you a threshold… " (Dorris Dep., 255-256)  Frustrated with these slippery responses, counsel pushed further:

Q.    But you use that phrase in your report. I need to know what it means so that I can understand your opinions.

A.    It's -- I think I've expressed what it means. It's -- It's a relative comparison. It is high probability as opposed to low or moderate

> probability. There's no quantification that I can give you.  (Dep, p. 255) . . . .
>
> Q      I'm just looking for something that defines the -- when this event becomes high enough in probability that it needs to be warned about. That's all I'm looking for.
>
> A.      Sure. I understand that. And what I've told you is I can't give you a specific number. There is no quantifiable number.  (Dep., p. 258-259)

Once it became clear that no quantifiable number was going to be offered, the inquiry moved to the elements of the qualitative analysis Dr. Dorris used to decide if the likelihood of the risk was enough to require a warning.  Dr. Dorris' answer illustrates the lack of legitimacy of his warning/no warning analysis:

> A.      It's -- I think I've expressed what it means. It's -- It's a relative comparison. It is high probability as opposed to low or moderate probability. There's no quantification that I can give you.
>
> Q.      Then it seems to be meaningless. What's the definition -- The opposite end would be low probability, correct?
>
> A.      Yes, sir. It's qualitative. And it would probably -- It would, in fact, be dependent upon the circumstance or the product or the occurrence in terms of if you consider it to be high probability. I'm just telling you it's a quantitative assessment. And that's perfectly accepted. If you look at system safety literature, there's textbooks -- quantification is not always necessary. One need not do statistical analysis to have any precision and descriptive statistics, that a qualitative assessment of relative occurrence is acceptable. (Dep., p. 256)

Counsel then pressed him for the elements of the "qualitative assessment:"

> Q.      Well, I want to know the quantitative descriptors that go with

the qualitative phrase, high probability event, or its opposite, low probability event.

A.      I -- I cannot give you one.  (Dep., p. 257)

As is shown above, there are no elements to his analysis; thus it can hardly be accepted by this Court as a valid scientific basis for Dr. Dorris' opinion that no warning was necessary.  "To be reliable, expert testimony must be both the product of reliable principles and methods and based on sufficient facts or data. Fed. R. Evid. 702.  If an expert fails to properly apply generally accepted principles in obtaining the data on which his opinions are based, his opinions may be excluded as unreliable." *Bowers v. Norfolk Southern Corp.*, 537 F.Supp.2d 1343, 1374 (M.D. Ga. 2007).  While it is true that an expert opinion should not be excluded because a witness does not follow a formula properly, *e.g. Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1343 (11th Cir. 2003), it is equally true that where the method they choose does not actually have any rules it cannot be the basis of an admissible opinion and the testimony based on such a loose approach must be excluded.  *Bowers*, *supra.*

**3.      Dr. Dorris Must be Prohibited from Testifying that "Unstable Loads are an Obvious Hazard."**

Dr. Dorris is of the opinion that it was obvious that the mold, as loaded <u>vertically</u> on the cart, was unstable and would tip off the cart.  He confirms that

this orientation is the obvious danger that did not need to be warned against in

several places in his deposition:

> Q.      So his choice at the end versus a foot from the end or dead middle, that's irrelevant; your concern was he chose to do it vertically, correct?

> A.      The orientation is a concern, yes, sir. (Dep., p. 127) . . .

> Q.      Right. But again, the open and obvious danger that you're -- that you told me that should have been perceived and not encountered was the open and obvious danger that the mold would fall over?

> A.      That it would fall over and injure someone, or that if it fell, it brought the cart with it, it would injure you.  (Dep., p. 175)

> ….  As I said, the hazard here in this particular accident is an improper and unsafe loading of the cart that would be obviously dangerous.

> Q.      Right, because the product might tip over?

> A.      Sure. It could fall. It could injure. It could strike someone. (Dep., p. 207) . . . .

> Q.      Dr. Dorris -- Dr. Dorris, you just said others agree. There's no testimony that anybody thought the cart and the item would tip over collectively. The only testimony is that people thought the item might be tippy.

> A.      I said dangerous. I didn't say that the cart and the item would tip over collectively. (Dep., p. 215)

Dr. Dorris must be prohibited from giving this opinion that loading the cart near

the end or vertically constituted an open and obvious danger because it does not

fit the facts of this case. The mold did not tip off the cart. It did not tip over because it was standing up. In fact, the mold is so heavy that it cannot be tipped off its feet. Dr. Brani tested this, and both he and Defendant's expert, Dr. Townsend agree that the mold would not tip over without significant force. (Brani 2/20/09 Dep., p. 37; 39-40; 41) Thus, Dr. Dorris' opinion that standing the mold vertically is irrelevant because the danger associated with that risk, the tipping of the mold off the cart, did not happen.

What actually happened is that when the mold was placed on the cart it was stable. When the cart was moved and the castors rotated, the cart went from stable to unstable and this caused the combination to land on the Plaintiff. Dr. Dorris says that this danger, the danger that actually caused Plaintiff's injuries, was not foreseeable to him or reasonable users of the cart. To wit:

> Q.    But you don't have an opinion whether the user should have perceived that the change in orientation of the axles on the wheels could cause it to go from stable to unstable; you're not going to opine on that, correct?
>
> A.    Correct. (Dep, p. 157) . . .
>
> Q.    You have not told me that it was an open and obvious danger that the cart would tip over because of a shift of the fulcrum associated with movement of the movable casters?
>
> A.    I have not said that because, as I said earlier, I think that's outside of my area. I believe that you've asked me to assume it in some questions, but I have not told you that. (Dep., 175-176) . . .

Q.     The open and obvious aspect of this was that it was near the end and it was vertical. You don't say that it was open and obvious that he would know that the change in orientation of the wheels would cause it to become unstable, correct?

A.     I -- I have not said that. And again, I --you know, you've asked me to assume that. I don't know it independently.  (Dep., p. 245)

### 4.     Dr. Dorris Must be Prohibited from Testifying that this Event Was Caused by a Lack of Training or a Violation of Resilux Policies.

Dr. Dorris must be prohibited from testifying that anything Resilux did caused Plaintiff's injuries.  This is because Defendant must be prohibited from putting up any evidence that Resilux is at fault, because Dr. Dorris is not qualified to render any such opinions, and because there is no factual basis for such opinions.

Plaintiff has filed a companion motion in limine to prevent Defendant from asserting that Resilux is at fault. (Doc. #156)  That motion is based on the lack of facts, the lack of necessary expert testimony, and the failure to assert this defense in a timely manner.  The arguments set forth in that motion will not be repeated here.

As to the necessary expertise to render an opinion on training, Dr. Dorris admits that he has no training or experience, has not studied the issue, and is not an expert in cart usage or cart training.  He has never been employed in an

"industrial setting where part of [his] job routine was to use a truck such as this."
(Dep., p. 77/22)   He has not even pushed the cart as manufactured by the
Defendant.   (Dep., p. 86/24)   When asked if he hand any experience "either in
watching other people train or studying what training is necessary for loading
large things that weigh over a ton onto hand trucks and hand carts and platform
hand trucks" he responded by saying "[n]ot similar to the specific instance, no,
sir."  (Dep., p. 80/15 -20)  He has not read any materials about training people to
use carts and states that "[s]pecific to this particular mold, loading it on this
platform, do I have any precise experience with training anyone or working with
the manufacturer on developing work site safety training practices? No."  (Dep.,
p. 82/4-12)  He admits that he has no opinion as to what training should have
been provided.  (Dep., p. 82/17)  And he has no knowledge at all of how other
companies anywhere in the world train their employees to use a similar cart.  In
fact, he does not even know of any other companies that use similar carts.  (Dep.,
p. 242/11)  In summary, Dr. Dorris states that he has "not been asked to evaluate
all of the training that occurred at Resilux and the appropriateness of its."  (Dep.,
p. 269/12)

Despite all of this testimony by Dr. Dorris that he is not an expert in
training, does not know what training should have been provided, and has not
evaluated Resilux's training (or that of any comparable company), he

nevertheless opines that a lack of training contributed to the Plaintiff's injures. The sole basis for this opinion seems to be an OSHA report that criticizes Resilux for failing to train the Plaintiff.  The problem with this is that the report is not admissible and the person who wrote it cannot be examined. *See, e.g. Brown v. LaCreek Elec. Ass'n, Inc.*, 939 F.2d 623, 625-625 (8th Cir. 1991) (OSHA report stating plaintiff had not been properly trained inadmissible); *Custer v. Terex Corp.*, 196 Fed. Appx. 733, 740 (11th Cir. 2006) (admission of OSHA investigation letter concluding employer failed to train forklift operator was an abuse of discretion where only issue was whether there was a design defect and whether the plaintiff was comparatively at fault).  While an expert can rely on the expert opinions of others as *part* of the basis for his own opinion, he is not allowed merely to parrot another's opinion as the *entirety* of his opinion.  *Weisgram v. Marley*, 169 F.3d 514, 519 (8th Cir. 1999), *aff'd* 528 U.S. 440 (2000).  Without an independent basis for his opinions that training had anything to do with the cause of Plaintiff's injuries, Dr. Dorris' opinions on this issue should be excluded.

The final element of this portion of Plaintiff's motion relates to Dr. Dorris' opinion that Plaintiff was injured because he did not comply with Resilux policy. First, Resilux had no policy that prohibited Plaintiff from using the cart in the manner chosen; second, even if there was such a policy, an expert's testimony is not necessary to assist the jury in determining such a simple fact question.

At page 7 of Dr. Dorris' Rule 26 Report he includes several quotations from Mr. Torres' deposition for the proposition that it was Resilux policy to lay the 48 cavity mold down instead of place it on the cart vertically in the fashion Plaintiff chose.  However, the fact that Mr. Torres would not have moved the mold with it standing in a vertical position does not mean it was Resilux policy to lay the mold down on the carts.  He did not so testify.  His comment only means it was Mr. Torres' practice.  There is no evidence at all that loading the mold in a vertical orientation violated Resilux policy.

Assuming arguendo that Watkins was in violation of Resilux policy, it would still be inappropriate to allow Dr. Dorris to offer such testimony for the jury's consideration.  He has no training or cart expertise, nor any expertise on Resilux' policies.  Thus, the avenue for Dr. Dorris to offer an opinion on this issue is Fed. R. Evid. Rule 701, which allows lay witnesses to give opinions in certain circumstances.  Dr. Dorris does not meet the requirements set forth in Rule 701 because he did not perceive Mr. Watkins' actions nor will his opinion (given his total lack of expertise in carts) assist the jury.  Because Dr. Dorris has training in human factors, allowing him to testify in this area will confuse the jury and lead them to believe that he is offering expert testimony that they should give additional credence to.

Lastly, this evidence at best relates to contributory negligence by the Plaintiff. Plaintiff is only pursuing a strict liability claim in this case. (Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. # 127) Accordingly, his contributory negligence is irrelevant and Dr. Dorris' testimony that supports any such defense must be excluded. *See Barger v. Garden Way, Inc.*, 231 Ga. app. 723, 727 (1998) ("Contributory negligence is not a defense to a claim of strict liability for product-caused harm.")

**4a.   Dr. Dorris Must be Prohibited from Testifying that the Change in Resilux Cart Loading Policy is Proof that a Lack of Training Caused the Event.**

After Plaintiff was injured, OSHA cited Resilux for violating the general safety requirements and suggested that Resilux implement additional rules for cart use.   As the OSHA document and findings are not admissible independently, (Plaintiff cannot cross examine the writer and his skills and expertise are unknown), Dr. Dorris cannot be allowed to publish these findings or rely upon them in the absence of independent expertise in cart use training, for all of the reasons stated above.

**5.   Dr. Dorris Must be Prohibited from Testifying that He Has A "Disagreement with Dr. Colton" relating to the "'hidden danger' associated with the rotation of rear wheels.**

20

There are two reasons for this exclusion.  First, Dr. Dorris repeatedly states that he has no expertise or opinion relating to the design of the cart – thus, he is not aware of whether it has hidden dangers or not.  Second, such an opinion is inconsistent with Dr. Dorris' expressed position that the danger that caused Plaintiff's injury was not readily perceived by the Plaintiff Watkins.  When an expert's opinion is internally inconsistent, it is no longer reliable and cannot be helpful to the jury. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)(affirming trial court's exclusion of expert due, as internal inconsistencies in the expert's proffered opinions made them unreliable.)  Opinions that are not helpful cannot be admitted into evidence.

For Dr. Dorris to testify that there is, or is not, a hidden danger associated with the use of the cart, it is axiomatic that he have an opinion about the hazards presented by the rotation of the castors during the use of the cart.  When specifically asked about this in his deposition, he said "I don't have an opinion about that, as I told you earlier, because its' – it's outside of – - of my expertise." (Dep., pp 206-207).  Movant agrees that an expert can refer to and rely on the opinions of other experts in reaching his opinions.  However, if the only opinions of qualified experts that he has seen describe a danger then those opinions are the only ones upon which he can rely.

In this case, at the time Dr. Dorris articulated his opinions that there is no hazard, the only reports he had been provided are the reports of Dr. Colton and Dr. Brani – both of whom are Plaintiff's experts and both of whom clearly opine that there are hidden dangers associated with movement of the castors on the subject cart.  (Dorris Rule 26 Report, p. 2)  At the time of Dr. Dorris' report and deposition testimony, while he had seen the reports of Dr.'s Colton and Brani, he had not reviewed anything from the only experts who could provide a basis for his opinion that no hidden danger existed.  (Dep., p. 88/15)  Given that Dr. Dorris had not seen the reports of the Defendant's engineering experts, and given that he had never operated a similar cart, it is hard to discern any basis whatsoever for his opinion that there were not dangers in the cart – hidden or otherwise. (Dep., p. 86/24)  Where there is an absence of a scientific basis for an opinion, the opinion cannot be admitted into evidence.  *See, e.g. Cali v. Danek Medical, Inc.* 24 F.Supp.2d 941 (W.D. Wis. 1998) (where expert's report provided no scientific basis for his opinion and his deposition testimony established that he had no scientific basis for his opinion, trial court excluded report and testimony as pure speculation).

Compounding the lack of scientific basis for Dr. Dorris' opinion is the fact that he actually appears to agree with Dr. Colton.  Dr. Dorris was repeatedly asked if the danger that actually caused Plaintiff's injury – the rotation of the

castors – should have been appreciated by Plaintiff.  On every occasion he agreed that it should not have been.   His criticism of the Plaintiff was not "his failure to understand that if he changed the orientation of the wheels under the cart that the cart would become tippy." (Dep., p. 155/24)  The following illustrates Dr. Dorris' opinion that the danger was actually hidden from the Plaintiff:

> Q.    But you don't have an opinion whether the user should have perceived that the change in orientation of the axles on the wheels could cause it to go from stable to unstable; you're not going to opine on that, correct?
>
> A.    Correct. (Dep., p.157/16.)

Dr. Dorris simply refused to say the danger that caused Plaintiff to be injured was open and obvious.  (Dep., p. 245/24)  The converse must therefore be true, and inconsistent with his stated opinion, that the danger was hidden.

**6.    Dr. Dorris Must be Prohibited from Testifying about the Reasonableness of Defendant's Warning Efforts.**

Dr. Dorris knows nothing about the Defendant.  If he had chosen to do the work necessary to support the opinion, Dr. Dorris might well have been able to offer an admissible opinion about the efforts the Defendant took to determine if any dangers associated with its products.  But, the record reflects that Dr. Dorris does not have a clue about the process the Defendant undertook to determine if warnings were necessary.   He does not know the level of the Defendant's

sophistication to test and determine if warnings are necessary. (Dep., p. 271/18) He is not aware of efforts by Defendant to place anthropomorphic warnings on the product. (Dep., p. 20/24)   He does not know how many products the Defendant manufacturers, how many workers it has, or whether it uses outside consultants to determine if warnings are necessary. (Dep., p. 31/14-24)   He has not even talked to anyone employed by the Defendant.   (Dep., p. 86/11)   He refused to identify any facts demonstrating that Defendant had conducted a careful analysis of its product to determine if a warning was necessary. (Dep., p. 182- 184)

Furthermore, because Plaintiff is only pursuing a strict liability claim, any such testimony would be irrelevant because good care is not a defense. Restatement 2d Torts §402A; *Manning v. Altec, Inc.* 488 F.2d 127 (6th Cir. 1973).

### 7.   Dr. Dorris Must be Prohibited from Testifying about How the Incident Occurred that Differs from That offered By Dr.'s Brani and Colton.

Dr. Dorris has done no analysis of how the event occurred.  At the time he reached his opinions, the only descriptions he had of how the event occurred were contained in the reports and testimony of Drs. Brani and Colton. Accordingly, any opinion he offers, to be consistent with that set forth in his Rule 26 Report must be based on the description as provided by Plaintiff's experts.

He cannot be allowed to appear at trial and have a materially different basis for his opinions.

**C.    Dr. Dorris' Opinions Do Not Fit This Case And Are Irrelevant.**

"In the context of Rule 702, evidence is relevant if it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2009 WL 856306, *5 (N.D.Ga. 2009) (*quoting Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir.1999); Fed.R.Evid. 702). When faced with competing expert opinions, "*Daubert* does not permit the Court to 'evaluate the credibility of opposing experts and the persuasiveness of competing scientific studies.'" Id. at *6 (quoting *Quiet Tech v. Hural-Dubois UK*, 326 F.3d 1333, 1341 (11th Cir. 2003)).

### III.    CONCLUSION

Here, Dr. Dorris is not a qualified expert as to some of his opinions, and as to the others he failed to follow an accepted methodology to arrive at relevant opinions.  As a result, Plaintiff's motion should be granted, and his testimony should be disallowed.

This 23rd day of October, 2009.

Respectfully submitted,
WARSHAUER POE, P.C.

By:    /s/  Michael J. Warshauer
Michael J. Warshauer
Georgia Bar Number 018720

Douglas C. Dumont
Georgia Bar Number 232680

3350 Riverwood Parkway
Suite 2000
Atlanta, Georgia  30339
(404) 892-4900

****************************
**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing upon Defendant's counsel of record in this action and with the Clerk of Court using the CM/ECF system, which will automatically send email notification to the following attorneys of record:

Gary L. Seacrest, Esq.
Karsten Bicknese, Esq.
Seacrest, Karesh, Tate & Bicknese
56 Perimeter Center East
Suite 450
Atlanta, GA 30346

Melisa L. Bodnar, Esq.
Law Offices of Glenn G. Gomer
600 N. Westshore Blvd.
Suite 1001
Tampa, FL 33609

This 23rd day of October, 2009.

WARSHAUER POE, P.C.

By:___/s/  Michael J. Warshauer_____
Michael J. Warshauer
Georgia Bar Number 018720

3350 Riverwood Parkway
Suite 2000
Atlanta, Georgia  30339
(404) 892-4900