# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

JOHN WATKINS,

    Plaintiff,

LIBERTY MUTUAL INSURANCE COMPANY,

    Intervenor Plaintiff,

v.

VESTIL MANUFACTURING CORP.,

    Defendant.

CIVIL ACTION NO.
2:07-CV-0152-RWS

## ORDER

This case comes before the Court on Defendant's Motion to Exclude the Testimony of Rustin M. Hunt, PhD.[103], Defendant's Motion to Exclude the Testimony of Jonathan S. Colton, PhD. [104], Defendant's Motion to Exclude the Testimony of David Michael Brani, PhD. [105], Defendant's Motion for Summary Judgment [107], Defendant's Third Party Motion for Oral Argument [108], Intervenor Plaintiff's Motion to Bifurcate [117], Defendant's Motion to Exclude the Affidavit of John Watkins [146], Plaintiff's Motion in Limine to

Exclude All Evidence Employer Failed to Properly Train Plaintiff [156], Plaintiff's Motion to Exclude the Testimony of Nathan T. Dorris, PhD. [157], Plaintiff's Motion to Exclude the Testimony of Douglas W. Townsend, PhD. [158], Plaintiff's Motion to Exclude the Testimony of Jon B. Ver Halen, P.E. [160], Plaintiff's First Motion to Strike Notice of Resilux America, LLC's Fault as Untimely [172], Plaintiff's First Motion to Strike Notice of Resilux America, LLC's Fault on Constitutional Grounds [173], and Joint Motions for Extension of Time [178, 179].

## I.  Background

According to the Complaint, Plaintiff John Watkins was injured when the handle of a cart sold and manufactured by Defendant Vestil Manufacturing, Corp. ("Vestil") failed, resulting in substantial injury to Plaintiff's leg. (Dkt. No. [1].) Plaintiff was working as a mold technician, a job that required Plaintiff to change out molds inside machines to allow the machines to make different types of plastics. Plaintiff alleges that during the transition, the mold and the cart fell, landing on top of his right leg. Plaintiff filed suit, alleging that Defendant's negligence, defective design, and/or defective product resulted in Plaintiff's physical injury, disability, medical expenses, loss of earnings, and

2

loss of earning capacity. (Id.) Plaintiff's employer, Resilux America LLC, was insured for worker's compensation insurance by Liberty Mutual Insurance Company ("Liberty Mutual"). Pursuant to the provisions of the Georgia Worker's Compensation Act, Liberty Mutual paid worker's compensation benefits to the Plaintiff. (Dkt. No. [26] at 4.) The Court granted Liberty Mutual permission to intervene as a matter of right as a party plaintiff. (See Order dated Dec. 1, 2008.)

## II. Motions to Exclude Expert Testimony

### A. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of proposed expert evidence :

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The trial court, as the gate-keeper, must determine that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-91

(1993) (quoting United States v . Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). The trial court must also "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. Ltd. v. Carmichel, 526 U.S . 137, 152 (1999). The Eleventh Circuit has synthesized the existing rules into a three-part inquiry, instructing courts to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998), reh'g and reh'g en banc denied , 172 F.3d 884 (1999).

With respect to the reliability of expert testimony, relevant factors include "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Id. at 1262

4

(quoting Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003)). "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." Id. It is important to note that "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible." U.S. v. Brown, 415 F.3d 1257, 1268 (11th Cir.2005).

### B. Dr. Ruston M. Hunt [103]

Plaintiff retained Dr. Ruston Hunt as an expert in human factors and warnings. (Dkt. No. [126] at 5.) He opines on the need for warnings, how warnings and instructions work, the feasibility of warnings on products and their effectiveness on human behavior. (Id. at 1.) Defendant does not contest Dr. Hunt's qualifications, but argues that his methodology is unreliable. Specifically, Defendant states that Dr. Hunt's testimony is based on subjective beliefs and unsupported speculation regarding the forseeability of a particular use or injury. Further, Defendant contends that Dr. Hunt's opinions are unhelpful to the trier of fact and irrelevant to the factual issues at hand. In response, Plaintiff argues that Dr. Hunt applies the same methodology in

5

drafting the subject warnings as he would in a non-litigation setting. Further, Plaintiff details the empirical and analytical process that Dr. Hunt employed in formulating his conclusion. The Court finds that Dr. Hunt's testimony meets the standard set forth by Daubert and would be helpful to the trier of fact. Defendant may question Dr. Hunt's conclusions and analysis in cross examination and through a rebuttal expert. Defendant's Motion to Exclude the Testimony of Dr. Rustin M. Hunt [103] is **DENIED**.

### C. Dr. Jonathan S. Colton [104]

Plaintiff retained Dr. Colton as an engineering expert to calculate the tip over potential of the subject cart, depending on the user supplied and imputed variables. (Dkt. No. [142] at 5.) Defendant seeks to have Dr. Colton's testimony excluded on the basis that it is unreliable and inadmissable. Defendant contends that the testimony supposes facts not in evidence and relies upon unsupported assumptions about the structure and the mold at issue. Dr. Colton's reliance on such unsubstantiated assumptions negates the relevancy of his testimony. (Dkt. No. [104] at 17.) Further, Defendant argues that Dr. Colton's calculations lack "intellectual rigor" in that he fails to account for the various alternate placements of the mold on the cart, test alternative scenarios

6

for the incident, or view the handle of the cart used by Plaintiff. (Dkt. No. [104] at 13-14.) In response, Plaintiff states that Dr. Colton conducted a thorough investigation consisting of: 1) inspection of the exemplar and modified cart, mold, and wheel plates; 2) photographs and notes of the inspection; 3) consultation of Defendant's website, Dr. Brani's report, textbooks, handbooks, depositions; and 4) Excel calculations based on his findings. Plaintiff points out that Defendant takes issue with the numbers and figures used by Dr. Colton to derive his conclusion, not his formulas or methodology. Plaintiff argues, and the Court agrees, that such issues go to the weight of Dr. Colton's testimony, not its admissibility, and should be explored on cross examination. Quiet Technology DC-8, Inc., 326 F.3d at 1345 ("The identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination.") Dr. Colton's testimony is relevant to the case at hand and will assist the trier of fact in determining the cause of the incident. Defendant's Motion to Exclude the Testimony of Jonathan S. Colton, PhD. [104] is **DENIED**.

### D. Dr. David Michael Brani [105]

Dr. Brani has been retained by Plaintiff as an additional engineering

7

expert. He testified that a modified cart would have prevented the injury that Plaintiff sustained. Defendant argues that Dr. Brani's testimony should be excluded because he negligently overlooks other possibilities that may have caused the tipping of the cart. (Dkt. No. [105] at 8.) His analysis results in subjective conclusions that "the cause of the accident in question was an external force that caused the wheels on the cart to rotate to an unstable position." (Id.; Brani Dep. 121:2-14.) Defendant takes issue with the fact that Dr. Brani did not examine the casters through metallurgical testing in order to determine whether caster failure played a role in the incident. (Dkt. No. [105] at 14.) This lack of testing suggests that Dr. Brani's analysis does not possess the intellectual rigor required for admissibility. In general, Defendants argue that Dr. Brani's testing does not mirror the accident in question and therefore is irrelevant. In response, Plaintiff contends that Dr. Brani tested the stability of the model based on facts he gathered through his examination of the cart and the incident scene, as well as consideration of depositions and metallurgy reports. Plaintiff further explains how Dr. Brani ruled out other causes of the incident. (Dkt. No. [141] at 12.) The Court finds that Dr. Brani is a qualified expert, and his testimony is relevant and helpful to the trier of fact. Defendant's

8

Motion to Exclude the Testimony of David Michael Brani, PhD. [105] is **DENIED**.

### E. Dr. Nathan T. Dorris [157]

Defendant employed Dr. Dorris as an expert to testify regarding the harmful impact of over-warning product users. Plaintiff argues that Dr. Dorris seeks to testify concerning matters outside his scope of expertise and lacking scientific basis. (Dkt. No. [105].) Specifically, Plaintiff argues that Dr. Dorris is not qualified to render opinions regarding the liability of employer Resilux or the design of the cart. Further, Plaintiff contends that Dr. Dorris' opinions do not fit the facts of the case. Id. Additionally, testimony pertaining to good care or negligence is irrelevant to the case and should be barred. In response, Defendant asserts that Dr. Dorris' area of expertise is "warnings and communications pertaining to product safety." (Dkt. No. [165] at 13.) Accordingly, he should be permitted to testify regarding the various aspects of product safety, including employee training and the inherent dangerousness of the cart in question. The Court concludes that Dr. Dorris will be permitted to testify on the subjects challenged by Plaintiff except, based on the Courts ruling in Section VI hereof, Dr. Dorris will not be permitted to testify that the event

9

was caused by lack of training or a violation of Resilux policies. Also, Dr. Dorris may not offer his opinion on how the incident occurred. His report includes no analysis supporting such an opinion. Plaintiff's Motion to Exclude the Testimony of Nathan T. Dorris, PhD. [157] is **GRANTED, in part,** and **DENIED, in part**.

### F.  Dr. Douglas W. Townsend [158]

Dr. Townsend has been retained by Defendant to provide expert opinion on warning and product design. Plaintiff contends that Dr. Townsend's testimony speaks to irrelevant issues and matters outside his area of expertise. In response, Defendant explains that Dr. Townsend engaged in extensive research and conducted various tests to reach his opinions. Such methodology is an appropriate basis for formulating an opinion regarding the cause of the accident. However, Defendant has failed to establish a foundation for Dr. Townsend's opinion regarding whether the point load created by the mold would have been anticipated by a competent engineer. Therefore, Dr. Townsend may not testify as to that opinion. As to his other opinions, the Court concludes that Dr. Townsend is qualified and his opinions are reliable and helpful under the Daubert standard. Further issues regarding his methodology

should be explored on cross-examination. Plaintiff's Motion to Exclude the Testimony of Douglas W. Townsend, PhD. [158] is **GRANTED, in** part, and **DENIED, in part**.

    G.    Jon B. Ver Halen [160]

Defendant retained Mr. Ver Halen as an expert on warnings and design issues. He specializes in accident reconstruction and opines on the cause of the accident at issue. (Dkt. No. [168] at 7.) Plaintiff takes issue with several of Mr. Ver Halen's opinions. Specifically, Plaintiff contends that Mr. Ver Halen's opinions regarding the alleged negligent conduct is irrelevant because negligence is not an element of Plaintiff's claims. (Dkt. No. [160] at 3.) Further, Plaintiff argues that Mr. Ver Halen opines on issues outside his area of expertise for which he has no scientific or factual basis. In particular, Plaintiff takes issue with Mr. Ver Halen's opinion that Plaintiff may have pulled the mold causing the accident or that Defendant could not have foreseen that the car would be loaded in that manner. (Id. at 6-8.) Defendant, in response, states that Mr. Ver Halen's testimony speaks to Plaintiff's assumption of the risk which is applicable in a product liability claim. (Dkt. No. [168] at 7.) Further, Mr. Ver Halen's qualifications as an experienced engineer permit him to testify as to the

11

AO 72A
(Rev.8/82)

possible causes and foreseeability of the accident, particularly when factual issues remain. Mr. Ver Halen's areas of expertise include design of factories, production lines and production efficiency improvement; product design and industrial design, including warning and instructions; analysis of safety codes and requirements; and human factors. However, based on the Courts ruling in Section VI hereof, Mr. Ver Halen will not be permitted to offer his opinions regarding the failure of Resilux to properly train Plaintiff. Otherwise, the Court finds that Mr. Ver Halen is qualified and should be permitted to testify as to the other challenged opinions. Plaintiff's Motion to Exclude the Testimony of Jon B. Ver Halen, P.E. [160] is **GRANTED, in** part, and **DENIED, in part**.

**III. Motion for Summary Judgment**

A. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

12

The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### B. Defendant's Motion for Summary Judgment [107]

As an initial matter, the Court finds that the Parties have adequately briefed the relevant issues such that a hearing on the matter is not necessary. Accordingly, Defendant's Request for Oral Argument [108] is **DENIED**.

On summary judgment, the only remaining issues before the Court are Plaintiff's design defect claim and failure to warn claim. (Dkt. No. [127] at 1.)[1] Defendant seeks summary judgment as to these remaining claims. Upon review of the record, the Court finds that issues of material fact exist that preclude judgment. Among such issues are: the foreseeability of Plaintiff's use of the

---

[1] In his Response to Defendant's Motion for Summary Judgment [127], Plaintiff withdrew his manufacturing defect claim, Georgia common law negligence claim, and punitive damages claim.

13

cart; the events surrounding the accident including the manner in which the mold was loaded onto the cart and whether Plaintiff had any contact with the cart at the time it tipped over; Plaintiff's assumption of the risk and knowledge of posed danger; obviousness of the danger; Defendant's failure to communicate or post warnings on the cart; and the proximate cause of Plaintiff's injuries. Accordingly, Defendant's Motion for Summary Judgment [107] is **DENIED**.[2]

## IV. Intervenor Plaintiff's Motion to Bifurcate Case [117]

Intervenor Plaintiff Liberty Mutual states that it provided workers' compensation benefits to Plaintiff as a result of his injuries and is entitled to a subrogation lien in the event of a judgment against Defendant. Liberty Mutual requests that the Court bifurcate the case into two phases, phase one consisting

---

[2]Plaintiff submitted the Affidavit of John Watkins along with its Response to Defendant's Motion for Summary Judgment [127]. Defendant seeks to exclude the affidavit on the basis that it was not based on personal knowledge in violation of Fed. R. Civ. P. 56(e)(1). (Dkt. NO. [117] at 4.) Defendant labels several statements made by Plaintiff Watkins as speculation or guesswork and argues that such statements are impermissible. Plaintiff contends that the statements are made based upon knowledge acquired through experience working with the mold and cart at issue. (Dkt. No. [145] at 3-4.) The Court finds this argument persuasive and holds that Plaintiff had sufficient personal knowledge through his daily contact with the equipment upon which to base his statements. Accordingly, Defendant's Motion to Exclude the Affidavit of John Watkins [146] is **DENIED**.

14

of both liability and damages and phase two consisting of a hearing to determine whether Liberty Mutual is entitled to a subrogation lien against the amounts received by Plaintiff. The Court finds that bifurcation is appropriate. The case shall proceed in two phases. Phase two of the case shall commence only upon a finding of liability on the part of Defendant and an award of damages to Plaintiff. Intervenor Plaintiff's Motion to Bifurcate [117] is **GRANTED**.

**V.     Motion in Limine to Exclude Evidence [156]**

Plaintiff argues that Defendant has not raised the defense of employer Resilux's liability in a timely manner. Accordingly, Plaintiff seeks to have the Court exclude any evidence or testimony pertaining to the alleged liability of Resilux in failing to properly train or supervise the Plaintiff. (Dkt. No. [156] at 1.)

In Plaintiff's First Interrogatories, the following interrogatory was posed to Defendant:

> If you allege that any person or entity . . . was careless or
> negligent, or failed to exercise reasonable care, or was the
> cause of the Occurrence in any way . . . please identify each
> such person and as to each describe with specificity what you
> believe they did that caused or contributed to the incident . . .

15

(Dkt. No. [156] at 5.) In response, Defendant objected to the interrogatory as overly broad and seeking information not reasonably calculated to lead to admissible evidence. Defendant also stated that it had not had the opportunity to investigate the matter and could not determine the cause of the occurrence. Defendant went on to state: "Defendant will now begin its investigation, and will avail itself of the yet to begin discovery process to apprise itself of the facts and circumstances causing, and leading up to, the alleged occurrence." (Id. at 6.)

Plaintiff contends that Defendant has failed to comply with Fed. R. Civ. P. 26 which requires that a party must supplement its interrogatory response, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Additionally, local rules require a party to timely supplement and amend its initial disclosures. L.R. 26.1(C); Reese v. Herbert, 527 F.3d 1253, 1266 n.17 (11th Cir. 2008). While Defendant concedes that it did not supplement its interrogatory responses, it argues that Plaintiff has been made aware of its intentions to assert Resilux's fault as a

16

potential defense. (Dkt. No. [163] at 4.) In particular, Defendant states that the Occupational Safety Health Administration (OSHA) reports, Rule 26 expert reports, and deposition testimony placed Plaintiff on notice of the potential defense.

By not supplementing its interrogatory responses, Defendant failed to comply with Fed. R. Civ. P. 26(e)(1) and Local Rule 26.1. While Defendant's experts Ver Halen and Dorris did raise the issue of Resilux's potential liability, Defendant never formally raised the defense or answered the specific question posed to it in Plaintiff's interrogatory. Defendant had ample opportunity to supplement its interrogatory responses throughout the lengthy discovery period. To allow such defense at this stage of the litigation would alter the nature of the case and result in prejudice to Plaintiff. The Court finds that Defendant's failure to supplement its responses was not harmless and it should be barred from asserting a defense based upon fault on the part of Resilux.[3] Accordingly, Plaintiff's Motion in Limine to Exclude All Evidence Employer Failed to Properly Train Plaintiff [156] is **GRANTED**.

---

[3]Defendant's argues that O.C.G.A. § 51-12-33 -- which provides a safe harbor of 120 days before the trial for a party to assert the fault of nonparty. The Court finds that such statute is not applicable in this federal case.

## VI. Motions to Strike Defendant's Notice of Defense of Fault of Non-Party [172 and 173]

Following the filing of Plaintiff's First Motion in Limine: To Exclude All Evidence Relating to Defendant's Assertion that Plaintiff's Employer Caused or Contributed to the Plaintiff's Injuries [156], Defendant filed a Notice of Resilux America, LLC's Fault [166]. Plaintiff filed motions to strike Defendant's Notice on the grounds that the notice is both untimely and unconstitutional [172 and 173]. Given that the Court has ruled above to exclude all evidence that employer Resilux failed to properly train or supervise Plaintiff, such requests are moot. Accordingly, Plaintiff's First Motion to Strike Notice of Resilux America, LLC's Fault as Untimely [172] and Plaintiff's First Motion to Strike Notice of Resilux America, LLC's Fault on Constitutional Grounds [173] are **DENIED, as moot**.[4]

## Conclusion

Based on the foregoing, the Court rules as follows: Defendant's Motions to Exclude the Testimony of Rustin M. Hunt, PhD.[103], Jonathan S. Colton,

---

[4] The Parties' Joint Motions for Extension of Time to file a Reply to Plaintiff's Motions to Strike [178, 179] are **GRANTED nunc pro tunc**.

PhD. [104], and David Michael Brani, PhD. [105] are **DENIED**; Defendant's Motions for Summary Judgment [107] and Oral Argument [108] are **DENIED**; Intervenor Plaintiff's Motion to Bifurcate [117] is **GRANTED**; Defendant's Motion to Exclude the Affidavit of John Watkins [146] is **DENIED**; Plaintiff's Motion in Limine to Exclude All Evidence Employer Failed to Properly Train Plaintiff [156] is **GRANTED**; Plaintiff's Motions to Exclude the Testimony of Nathan T. Dorris, PhD. [157], Douglas W. Townsend, PhD. [158], and Jon B. Ver Halen, P.E. [160] are **GRANTED, in part**, and **DENIED, in part**; Plaintiff's First Motions to Strike Notice of Resilux America, LLC's Fault as Untimely and Unconstitutional [172, 173] are **DENIED, as moot**; and the Parties' Joint Motions for Extension of Time [178, 179] are **GRANTED nunc pro tunc**.

The parties shall confer and, within thirty (30) days of the entry of this Order, submit to the Court a Proposed Consolidated Pretrial Order.

**SO ORDERED** this   5th   day of March, 2010.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)